You may proceed. Thank you. My name is Pete Connick. I'm an attorney and I represent David Rengo and I'm here to ask the court to allow me a trial date on an underlying civil rights claim and a tort of outrage claim made against the Seattle Police Department. And in particular, I focus this appeal on a July 21, 2014, order from the court dismissing the two remaining claims roughly a month before trial. Mr. Connick, can you help me with what your claim is? I see your brief is mostly about the notion of malicious prosecution. Well, it's about both, Your Honor. Tell me what the both are. Okay, the both are on July... No, just what are your claims? I'm sorry? What are your claims? I don't want to know when the judge decided them. I just want to know what are your claims? Excessive use of force, malicious prosecution. Okay. As to the malicious prosecution claim, put aside excessive force for a second. Okay. Was there any, and this is Manel liability you're seeking to impose on the city. Correct. Tell me where in the record there's any evidence of a pattern or practice of malicious prosecution by the City of Seattle. Okay. Your Honor, now I know you're going to jump on me for mentioning the Department of Justice report. Well, you can mention it, and I've read it, but it doesn't speak at all of malicious prosecution. I think it gives you some support for your excessive force claim, but that's why I separated the claims. Tell me where, either in that report or elsewhere, there's support for the notion that the City of Seattle has engaged in a pattern or practice of malicious prosecution. Okay. On malicious prosecution itself? Sure. You're making a claim that the City of Seattle is liable for the malicious prosecution. Your Honor... Right. So tell me where there's any evidence, other than, your case may well have been not appropriate to file, but tell me where there's evidence of a pattern or practice of malicious prosecution. Okay. There, one is the co-defendant to Mr. Rango. He was prosecuted and actually took a misdemeanor charge. There were at least 15 other cases involving Officer DiPino regarding excessive use of force. Well, no, but I'm not asking about excessive use of force. I'm asking about malicious prosecution. That's why I want you to separate the two, because you correctly said you have two claims. One is the excessive use of force. True. And the other one is malicious prosecution. And I'm trying to figure out where the evidence of malicious prosecution is, other than the fact that your client's case was thrown out, I take it mostly on procedural grounds, but tell me where the evidence of malicious... It wasn't on procedurals. In the interest of justice, because of misconduct by the police, that's why it was thrown out. As I read the judge's order, the misconduct was in terms of investigation and documentation, as opposed to misconduct in charging. And covering up. Okay. But, again, I still — let me tell you what my premise is. My premise is you don't have any evidence of a pattern or practice of malicious prosecution. You may have evidence of a pattern or practice of excessive force. And so I know you like the second conclusion. That's the first one. Tell me why I'm wrong. Okay. I believe you're wrong, Your Honor, because — and, again, this is reflected in my case, as it is in the DOJ report, that... You keep saying the DOJ report, but there's nothing in the DOJ report... There is about whitewashing and covering up. About malicious prosecution. Your Honor, I regard the covering up of — arresting of people as... But isn't it about the covering up of mishandling people when they're being arrested? Yes. No, it's — I can arrest somebody righteously. If I then use excessive force, I've violated civil rights. But it doesn't mean the prosecution of that individual is malicious, does it? Well, Your Honor, I believe that detention and the holding of a person is part of the process and part of the prosecution. Now, the Court may disagree with that, but... I'd like to ask you to address the other claim. And... The outrage? No, the excessive force claim. And the DOJ report, is that sufficient in your view to create evidence of a pattern in practice? Not by itself. Okay. What else is — and there's the video from the dash cam. There's the video. What else is there in the record besides the video and the DOJ report that specifically mentions some of the circumstances that were present here? Again, Your Honor, we have, as you can see on page 19 of our opening brief, and in the record, page exhibit 109 of the docket, Officer DiPino, we gave evidence, was the subject of 15 other complaints. You also have your client's statement, do you not? I'm sorry? You have your client's statement. Yes, I have. Your client said, this happened to me. We have the declaration from my client, correct? Right. So I believe that those things establish a pattern. In addition, and to the extent they fit the DOJ, we believe. Did the district judge reach that issue? Yes. As I read the district judge's — well, wait. As I read the district judge's order, he says, You've got some evidence of excessive force because your client said so. And I assume that, you know, he doesn't hold that the DOJ report establishes a pattern or practice. He says, but even if it does, there's no causation here. But he's saying by itself. Well — He's saying by itself. No, but let me just — actually, this isn't a hostile question, so don't fight me on it. He says there's no causation here. Isn't that — that's the judge's ruling, right? The judge says that you can't show causation because the report by itself isn't sufficient to establish causation. Well, that's true. Well, that's what he says. But haven't you established causation by complaining about precisely the kind of conduct the report documents? The report says that there's a pattern or practice of handcuffing people and then using excessive force on them. Right. That's precisely what your client complains of, is it not? Now, that's what's so confusing about this, is you have prior motions here, which the city goes into. It says, oh, originally we made a motion to dismiss, and that was denied. And the court there says specifically that the 1983 action is properly pled as well as the outrage. And those things can continue against the city. That's in 2013. But that was — those were motions to dismiss. We're now in motion for summary judgment. But then on the — when we tried to amend, on a motion to amend in January of 2014, this is roughly five, six months before the July ruling, he specifically puts in there — Counsel, we're at the motion for summary judgment stage, no longer at the pleading stage. So —  That's correct, Your Honor. But throughout, you'll see throughout the record, there are these different declarations being submitted, including Mr. Rengo saying I was choked out and all these other things, taken into custody, handcuffed, left in a cell, left for hours on end, accused wrongfully of smearing feces on the window, and then prosecuted, had to bail out of jail and prosecuted for an hour. So you have these things that are going on. And I understand that. But the judge is the one who ruled in January of 2014 on the second amended motion. The correctly pled things that are going forward are the 1983 claim and the outrage claim. Counsel, before — Nothing changes in terms of the record from January to July of 2014. And all of a sudden, a month before trial, we get this reversal. Counsel, I have a question that I'd like to pose to both sides, and that is whether this is the type of case or this is a case in which mediation would be of assistance. It could be. I think it could be. I think we — the problem is — well, I'm not sure. I think it would be helpful, but I always do. I might be a sunny optimist as I appear to the Court here, I'm sure. But I think their position was basically jump in the lake. We didn't do anything wrong. I don't recall doing any mediation or — Well, neither side actually seems to have covered itself in glory. I mean, it's — True. And I'm not disagreeing with that, Your Honor. Yes, we'd be happy to do mediation. Minimally, we wanted our day in trial, and we thought we had that, which was a surprise a month before trial that it got dismissed altogether in view of the light of the procedure and the prior pleadings and those exhibits. In particular, as you know, the arrest video of 6275 that was never produced during his criminal prosecution for over a year, was never produced by the city in this litigation, and it only came to us through persistent requests for public disclosure. And it was very painstakingly over the course of months, and on the fourth one, we got video 6275, which shows Officer Cobain at the car where Rango is placed into, shows Dapena getting around and getting into the car, which he admits later in deposition. So certainly there are disputed facts here where the court should not have given some re-judgment. Did you want to save some rebuttal time? I do. I'll save two minutes, 256. Thanks. Good morning, and may it please the Court. Your Honor, it's Ghazal Sharifi on behalf of the appellee, the City of Seattle. The appellant, through his briefing and argument, attempts to convolute an already complex record. So let's see if we can make it clearer. Yes. And let's just focus on the excessive force claim. Thank you, Your Honor. I read Judge Zille's decision, and he seems to say, well, you presented some evidence of excessive force. You have a declaration that you were choked. And there is this DOJ report. He doesn't say it's not sufficient to show a pattern or practice. But he said you haven't shown causation. Is that a fair summary of what Judge Zille said? Yes, Your Honor. So address that causation issue for me. If the pattern or practice alleged in the DOJ report, and there's a very specific section of it that says there's a pattern or practice of restraining handcuffing detainees and thereafter using excessive force on them. Especially if they talk back. Yeah. Especially if they're wise guys. So that's what the report says. I'm having difficulty understanding why somebody who complains of being injured that precise way and enters a declaration that he was, hasn't shown sufficient causation. So help me with that, if you will. For clarification, Your Honor, the force complaint by Mr. Rango is with regard to allegedly being choked in the back of the police vehicle. And the DOJ report identifies a series of alleged patterns that they saw. But isn't one of those, and he was not only in the back of the vehicle, he was handcuffed, was he not? That's correct, Your Honor. However, the force claimed here and his primary complaints isn't about being cuffed in a particular manner. No, but I'm saying the DOJ report, I read it again, has a very specific section that says there's a pattern of first restraining detainees and thereafter using excessive force on them, as Judge Graber says, if they talk back. And that's what he alleges here. And so I'm having difficulty with the causation problem. It may well be that if this case goes back to Judge Zille, he might find that the DOJ report isn't sufficient to establish a pattern or practice. But that's not what he said. He said, you know, I get to the second step, but I can't find causation. And that's why I'm having difficulty. So tell me why his injuries weren't caused by the precise pattern or practice that the DOJ report talks about. Your Honor, the DOJ report can be read broadly in that respect. And I would submit that Your Honor's interpretation of that is a broad reading One good example of a situation where the DOJ report was not only identified, but also where the causal link was made, at least for the purposes of summary judgment, is a district court opinion here in the Western District of Washington called Washington versus City of Seattle. And in that case, there were allegations that multiple officers piled up on one individual arrestee, which is very specifically one of the things that this report. Well, this was very specific, too. Because it said, if you talk back, you're going to have excessive force used against you. And there's another pattern or practice here, too, which is that this individual officer had a history of complaints made against him personally for excessive force, which permits an inference. It certainly doesn't require a finding, but it seems to me permits an inference that the city's otherwise robust custom and practice and policy of permitting excessive force specifically allowed this one officer to continue in his untoward ways. Why isn't that also a permissible causation inference? That, Your Honor, goes to the basis for Mr. Rango's Monell claim. Mr. Rango very specifically, as he identified even at the outset of this argument, identified on page 10 of his opening brief, has used the basis for his Monell claim alleging a pattern or practice of excessive force so as to establish a custom. With regard to the actions of one particular officer, Is it your view that a whole group of officers has to do something to him before it's a pattern or practice? No, Your Honor. But the record is actually silent on these multiple allegations or claims of excessive force against this individual officer. The report doesn't have to cover everything to be probative. There's separately material in the record demonstrating that this officer has been accused many times. And the record, Your Honor, the document that Mr. Rango's counsel is referencing is an e-mail from the public disclosure individual from the City of Seattle or the Seattle Police Department saying we've located 15 IISs, which is a form of complaint with regard to Officer DiPina. There's no indication of what these actually constituted, whether they were sustained, whether they were investigated, whether they were unfounded. So to make that leap is a pretty broad leap by counsel. But put those 15 aside for a second. I'm still stuck with, you know, you're not arguing that the report was insufficient to establish a pattern or practice. That's not what the judge held. And so I'm still stuck on causation. He's arguing that he was injured by the very pattern or practice, indeed a very specific one described in the report. You will be restrained, and then if you talk back, you will be subject to excessive force. So where is the causation link missing here? And I looked at the other case Judge Zille cites, and that was very different because at the end of the day, the plaintiff wasn't complaining about what was in the report. He was complaining about something different. But this is exactly what's in the report, isn't it? Your Honor, in every single arrest situation, there is a presumably there is a cuffing of an individual. And the cuffing is not by itself his claim. His claim is that he was cuffed and then choked, right? Precisely, Your Honor. Judge Kudu was trying to say something. Is the Department of Justice report on the city of Seattle and the police practices, is that enough to create a pattern and practice with respect to every practice that they discuss, that they do indicate it's a small number of police in the department? But is that enough standing alone? The opposing counsel said no, it wasn't. What's your view? Your Honor, we would agree with opposing counsel, and there is significant basis for that throughout various district courts throughout the country. In particular, there's a District of Columbia case called Byrd v. D.C. And the Byrd court very specifically identifies that reliance on such a report is inherently unreliable. And under a plaintiff's approach, a municipality would be ill-advised to evaluate its operational practices or institute reforms lest its efforts be labeled a policy or a custom. Wasn't the report in Byrd an internal investigation? The report in Byrd, Your Honor, was an internal investigation, but there's a case. Yes, and this was an investigation by the United States, and it specifically found that there was a pattern or practice on the part of the Seattle Police Department. This wasn't the sort of internal investigation that one should encourage. This was an external investigation that presumably no city wants to have. But I don't understand why, in theory or under the applicable precedents, the report isn't evidence of a pattern or practice when that's the precise finding of the report. Your Honor, it's not the city's position that it may not be evidence of a pattern or practice. It's that in and of itself. Why? It cannot establish a custom. What more do they have to prove, in your view? I'm sorry, Your Honor? So you say it's evidence, but not sufficient. Tell me what more they have to prove, in your view, to establish a pattern or practice. I think that there is no concession that it is evidence. Again, taking the court's view. You just said it was. I said it could be. Okay. Well, that's such a weaselly answer. It's not helpful to us. Is it or isn't it evidence of a pattern or practice when the U.S. Department of Justice says there's a pattern or practice? Is that evidence of a pattern or practice or not? Your Honor, the — That's a yes or no question. Is it evidence of a pattern or practice, the finding of the Justice Department, that there was such a pattern or practice? I cannot answer that without an evidentiary hearing, Your Honor, on the content and essentially the underlying findings of the report. They're in the report. That's correct, Your Honor. However — My evidence is not there, but they do review — they say they've reviewed several years of reports, and they've interviewed countless other people. Are you saying unless the underlying raw data and evidence is put into evidence that the report would not be sufficient in itself? That's correct, Your Honor. Did you make that argument below? Well, not in this particular — Or in this brief? In this brief, no, Your Honor. The Washington case where there was ultimately the causal connection made through a series of connections by the court to surpass summary judgment, there was, in fact, a bifurcation where the court scheduled a hearing to evaluate the reliability in terms of the admissibility of the report. And I understand that point, but that's not what the judge did here. The judge here said, got evidence of excessive force. I'll treat the DOJ report as establishing a pattern of practice, but you haven't shown causation. You might well be able to persuade the district judge — I think he'd be wrong, but that's a separate issue — that the report isn't any evidence of a pattern of practice. But that's not what he said. What he said was there's no causation. And it's that ruling I'm focusing on. You may well be able to make evidentiary objections to the report. It may well be that he shouldn't have considered it. But that's not what happened here. And so if we're focusing on what happened here, I've asked the same question  that somebody who suffers from the exact pattern of practice described in the report hasn't sufficiently established causation. For purposes of getting past summary judgment. For purposes of summary judgment. The jury might not believe it, maybe all kinds of other problems, but for purposes of summary judgment. Your Honor, in that circumstance, then every plaintiff would be able to overcome summary judgment. But that may be true. If a plaintiff alleges that he or she suffered an injury that's analogous to what was reported in the DOJ report — and there's a number of DOJ reports out there — your argument is that person would then be able to get to trial, overcome a summary judgment in every case. Is that what you're saying? Based on the broad — I guess the broad reading of the DOJ report in this context and the hypothetical that was presented. For example, Your Honor — And let me just say, what would be wrong with that? If there is a pattern or practice of excessive force in a particular police department, in a particular community, is it a — what's wrong with the idea that a person who has suffered the very kind of injury could get to a trial, could get to a jury with that claim? What is so sacrosanct about getting summary judgment in that circumstance? It's not established, Your Honor, that there is, in fact, a pattern or practice. I would direct the courts — direct the court to the language of the consent decree that follows this DOJ letter from Case 12-1282, where there is a disagreement by the City of Seattle about the contents and findings. But nobody's contending that you admitted to a pattern or practice. And I'm even putting aside the question of whether a judge could later find that this report was insufficient to establish a pattern or practice. I'm dubious on that proposition. But that's not what happened here, is it? The judge didn't say this doesn't establish a pattern or practice. And the court's question — Right? Right? The court didn't say, I looked at this report, it doesn't establish a pattern or practice, so I'm done. You have — Didn't the court say it does? I guess I missed that. Does the court say that it does establish a pattern or practice? It just moves on to the next question, doesn't it? Correct. Okay. Did it hold that it established a pattern or practice?  The court was — at least the court's opinion was silent. I don't know exactly what the court — Right. It didn't make a finding on that. Correct. One way or the other. The court's opinion was silent on that element of — Let's say it was not a DOJ report. It was just an expert report. So a plaintiff commissions an expert to study the record and comes up with an affidavit and a declaration at summary judgment, which would be part — a typical part of a summary report. Why wouldn't that be enough to create a genuine issue of material fact? Your Honor, the — as far as evaluating — I guess the hypothetical is incomplete in some ways, because it depends on what the expert evaluated, what the expert looked at, and the court would have to evaluate the expert's opinion. What if the expert said, I've looked at all this stuff the DOJ looked at and reached the same conclusion? Would that be sufficient to create a question of fact? In this case, no, Your Honor. Mr. Ringo's claim and the forced claim that he had was, I was choked. There is no policy or pattern or practice of — So what you're saying is if everybody else was beaten over the head from the exact same circumstance where they were arrested, handcuffed, placed in the back of the car, and choked — and talked back, that by simply varying the means of excessive force, the city can avoid having any pattern or practice or any causation sufficient to go to a jury? Last time we choked the guy. This time let's hit him upside the head so we don't get — have to go to court. No, Your Honor. It's not so simple in that the DOJ in this case had instances, for example, where they identified the use of items such as batons and the alleged excessive use of those. They identified multiple officers piling onto an individual. And what is — and like the Court mentioned, the manner in which they handcuff people, these allegations and this pattern was not established here, nor was it alleged by the plaintiff. I think we understand your position. Yes. I have one more, too, but please go ahead, Judge Acuda. Did plaintiff make any of these arguments to the district court in summary judgment? And that was my opening argument, Your Honor. Thank you. The plaintiff's only objections to the city's summary judgment motions were procedural. But even if that's true, doesn't the judge have to find any dead to compare to the judge that you should win as a matter of law? And the Court, as this Court is well aware, does not have an obligation to comb through the record to find some reason to deny summary judgment. And in this circumstance, where there is multiple emphatic repeat allegations of choking by Mr. Rango against one officer and then another because of an identification issue, that's what the focus is, is whether there is a pattern or practice of officers within the city choking. Well, okay, I'm not going to go back to that question, but I do want to ask you the question that I asked opposing counsel at the outset that I said I wanted both of you to address, and that is whether the city would be willing to engage in mediation in this case. Your Honor, I currently don't have the authority one way or another to agree, but the city is always open to mediation. Okay. Generally. Yes. Thank you. You have exceeded your time by quite a bit. Yes, I see that. Thank you, Your Honor. Thank you. Mr. Connick, if you wish to use it, you have some rebuttal time. Actually, Judge, I think the panelists addressed the concerns I had, and I'll wait for their argument. Thank you. Thank you. The case just argued is submitted, and we appreciate both of your arguments.
judges: Graber, Ikuta, Hurwitz